## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JOANNE JENKINS, et al,**

      **Plaintiff,**

**vs.**                                                  **CASE NO. 4:03CV208-SPM/AK**

**CITY OF TALLAHASSEE, et al,**

      **Defendants.**

_____/

### O R D E R

Presently before the Court in the above entitled action are the following motions:
(1) Defendant City of Tallahassee's Motion to Compel (doc. 59); (2) Defendants' Motion
to Compel Elaine Harper's Deposition Testimony (doc. 61); and (3) Plaintiffs' Updated
Motion to Compel.  (Doc. 75).  The motions are all fully briefed and the matters are now
ready for decision.

### Defendant City's Motion to Compel (doc. 59)

Interrogatory No. 11, served upon Plaintiff Joanne Jenkins on August 5, 2005,
asks for a list of all her medical providers over the past ten years, including the dates of
treatment and conditions for which she was treated.

Plaintiff objected to this interrogatory as overbroad, burdensome, and irrelevant.
Since the filing of the City's motion, Plaintiff has listed only one provider which she
claims is her only relevant medical source.  This is not sufficient.  As the City correctly

notes, Plaintiff has placed at issue in this lawsuit her mental condition because she seeks damages for pain and suffering and emotional distress.  Although Plaintiff contends that her physical condition is not at issue, and she is not alleging to have suffered any physical injuries resulting from the actions of the Defendants, the City is entitled to a list of all providers over the last ten years to determine the extent to which it wants to explore these sources for possible pre-existing or inter-related conditions.  The City also asks the Court to order production of all medical records from the providers once Plaintiff has listed them in her response to this interrogatory.  (Defendant's motion at p. 15).

First, the issue of all of Plaintiff's medical records in not in a proper posture before the Court for decision.  Defendant did not raise the issue of Request for Production of Documents No. 1, which asks for all her medical records, in its motion, it raised it in its reply.  (Doc. 82, p. 4).  Further, as the Court understands Defendant's position, it wants a list of all the medical providers and the conditions for which they treated Plaintiff so that it can decide which may be relevant.  Thus, the Court finds that the better procedure with regard to Plaintiff's medical records is that she provide the City with a complete and accurate list of all medical providers, their dates of treatment, and the conditions for which she sought treatment.  From this list the City should determine what providers have relevant information and make their requests for the information accordingly.  Plaintiff's counsel has stated that he has or was ordering all her health records so that formal discovery requests for this information can be made after Defendant has studied the list of sources.  (Doc. 59, Exhibit I).  Of course not every

**No. 4:03cv208-spm/ak**

condition for which Plaintiff has sought treatment for the past ten years will be relevant, but Plaintiff may make whatever arguments she wishes to make when the formal requests for records are made.

With regard to the mental health records of Dr. Snapp, Defendant has served a subpoena upon TMH Family Practice for these records, which were identified by counsel during several exchanges (doc. 59, exhibit J), and more particularly, Plaintiff's attorney has by letter dated October 6, 2005, affirmatively offered to provide the records of Dr. Snapp.  (Doc. 59, Exhibit I).  Thus, these records shall be produced forthwith.[1] However, the City has not adequately apprised the Court as to the nature of the other records sought by the request upon TMH, such as dates of treatment and conditions treated, presumably because Plaintiff did not fully answer Interrogatory No. 11, and the Court will not order a blanket request for all Plaintiff's medical records from this source. Again, Plaintiff shall respond fully to Interrogatory No. 11, and Defendant may decide after receiving the complete response from her which records it wishes to request. Therefore, Plaintiff's objections to this request are overruled.  **Plaintiff shall answer fully and completely Interrogatory No. 11 for the ten year period requested and any  records of Dr. Snapp not heretofore produced shall be produced to the City forthwith**.

Interrogatory No. 2 requests the list of her previous employers for the past ten years, business addresses, dates of employment and rates of pay.   Plaintiff objected on grounds that the request was overbroad, burdensome, and irrelevant because she is

---

[1]  According to Plaintiff she has produced these records on January 12, 2006.

**No. 4:03cv208-spm/ak**

not seeking lost wages as part of her damages.  However, she provided a list of

employers and their addresses, but did not identify the dates of employment or rates of

pay.  The City argues that the response is facially incomplete, and that Jenkins' made

conflicting statements about her employment history during her deposition that needs

resolution.  The City also argues that the information is calculated to lead to admissible

evidence with regard to the effects of the psychological damage Plaintiff claims to have

incurred as a result of Defendants' actions on her ability to sustain employment.

Plaintiff's employment history, Defendant contends, is also relevant to her credibility in

that the City has other evidence that shows she was fired for theft and deception and

may have lied on subsequent job applications about the incident related in a police

report regarding her Krispy Kreme employment.  (Doc. 59, Exhibit R).  In addition to

compelling a complete response to this interrogatory, the City also seeks leave from the

Court to serve Plaintiff's current employers with subpoenas for their personnel files.

Plaintiff objects to the proposed service of the subpoena on grounds that it would

be harassing or embarrassing to serve her current employers and could result in her

termination.  Plaintiff also cites an Order entered in an unrelated case by this Court for

the proposition that less intrusive means of obtaining the information should be

attempted.[2]  Instead, Plaintiff offers to stipulate that the injuries she alleges as arising

from the claims raised in this lawsuit have not had an adverse impact on her

employment.

---

[2] Baltazar v. Florida State Hospital, 4:04CV462-SPM/AK (doc. 36), affirmed on
Rule 72 appeal to the district judge.  (Doc. 40).

**No. 4:03cv208-spm/ak**

In its reply, the City avers by affidavit that it has verified that Plaintiff is no longer employed by the entities she named previously.  (Doc. 82, Exhibits BB, CC).

In light of Plaintiff's agreement to stipulate that her ability to work has been unaffected by any injuries suffered by the actions alleged in this lawsuit, and that she is not seeking past or future lost wages, the Court finds that the information sought by the interrogatory is no longer relevant, and Plaintiff is not required to respond.  Further, insofar as the City seeks information about the incident resulting in Plaintiff's arrest for fraud and theft, some other means should be employed to obtain this information than combing through her personnel files.  Defendant should depose Plaintiff on this issue or make a more particularized document request.  Therefore, the motion to compel is denied as to Interrogatory No. 2 and the request to serve subpoenas on her employers.

Request for Production No. 8 asks for "[a]ll emails, diaries, journals, calendars, chronologies, recordings, computer records or other items prepared by, or on behalf of, Plaintiff which relate to or reflect the incidents described in her complaint."  Plaintiff responded that she had no such documents that were not privileged.

Defendant argues that her privilege log was untimely and did not list a diary or journal, which Plaintiff admitted at her deposition to keeping in her home.

Plaintiff has stated in her response that she has looked in her home for the papers she referred to at her deposition, but they have "disappeared."

In its reply, Defendant contends that if these records are in fact now missing then sanctions for spoilation of evidence should be rendered.  From the facts before the Court there is not enough information to determine that Plaintiff intentionally destroyed

No. 4:03cv208-spm/ak

her "journal," which she later described as a few pages of notes, and since Defendant raised this issue in its reply Plaintiff has not been given the opportunity to address it. The Court cannot compel something which the Plaintiff does not have, and therefore, as to this item, the motion to compel is denied.  If Defendant wants to pursue the issue of spoilation it should consider raising it by separate motion.

**Defendants' Motion to Compel Elaine Harper's Deposition Testimony (doc. 61)**

Defendants took the deposition of Elaine Harper, Plaintiff Joanne Jenkins' cousin and a witness with considerable knowledge of Jenkins' claims, on November 28, 2005. At her deposition Harper invoked the Fifth Amendment privilege against self-incrimination when asked whether she recognized several documents, specifically a letter to Police Chief McNeil dated December 1, 2003, the original and two amended complaints filed in this cause, two civil rights complaint forms, a motion for leave to file an amended complaint that does not appear to have been filed in this cause, and Harper's signed sworn statement dated August 23, 2005.[3]  (Exhibits 1 through 8 to Harpers Deposition, Doc. 61, Exhibit C).  Plaintiff Jenkins testified at her own deposition that Harper helped her considerably with the drafting of her *pro se* complaints and other papers filed in this lawsuit.

Plaintiff is fearful for Harper that a criminal prosecution will be initiated against her for the unlicensed practice of law. [4] (Doc. 61, Exhibit F).  Plaintiff also rejects any

---

[3]  This document is not an affidavit since it is not notarized, thus the Court will refer to it as a sworn statement.

[4]  Plaintiff's counsel cites Fla. Stat. 454.23 which provides: "Any person not licensed or otherwise authorized to practice law in this state or holds himself or herself out to the public as qualified to practice law in this state, or who willfully pretends to be,

**No. 4:03cv208-spm/ak**

relevancy of the *pro se* pleadings filed in this cause since the third amended complaint, filed by her present attorney, supersedes these pleadings.  She also seeks a protective order on Harper's behalf.

In reply, Defendants correctly assert the applicable law regarding the protective order, *i.e.* Plaintiff has no standing to seek a protective order on Harper's behalf.  See Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 427-428 (M.D. Fla. 2005) (party has standing to challenge a subpoena to a non-party only if the party alleges a personal right or privilege with respect to the subpoena).  According to the letter attached to the reply it appears that Defendants have been advised that Harper has retained her own attorney now, who is reiterating the position taken by Jenkins' counsel.  (Doc. 105, Exhibit C).  Thus, the standing issue is really moot since Harper's new attorney obviously intends to assert Harper's rights independently, if pressed to do so.

The short answer is that the Court does not find most of this line of questioning to be relevant to the issues raised in this lawsuit.  The relevant pleading before the Court is the Third Amended Complaint, filed by counsel.  Thus, it is immaterial whether or not Harper recognizes or otherwise admits to preparing the *pro se* complaints or other court papers, except as to some intended criminal prosecution.  If defense counsel in this matter intends to pursue this issue with Harper he should do it in another forum and not bog down these proceedings with collateral issues concerning a non-party to this

---

or willfully takes or uses any name, title, addition, or description implying that he or she is qualified, or recognized by law as qualified, to practice law in this state, commits a felony of the third degree, punishable as provided in s.775.082, s. 775.083, or s.775.084."

**No. 4:03cv208-spm/ak**

lawsuit.  However, Defendants are entitled to ask Harper about the letter to Chief McNeil, which does not purport to be a legal document nor does it seem to implicate any of the acts forbidden by the Florida statute cited by Plaintiff.  Likewise, Defendants may ask questions about Harper's own statement.  This statement relates purely factual matters, it states no legal position or offers any legal advice or legal perspective. Defendants are clearly entitled to inquire of Ms. Harper her knowledge of the events at issue, which is all that is recited in her statement. Thus, Defendant's motion to compel is granted, insofar as Ms. Harper shall respond to questions about her statement, the letter to Chief McNeil, and other factual issues within her personal knowledge which are related to the events described in the complaint.  The motion is denied in all other respects.

## Plaintiff's Motion to Compel (doc. 75)

As an initial matter, the Court will not reiterate the substance of each discovery request, and where the Defendants have represented in their response that production has now been made, the Court accepts these representations since discovery is not filed, and Plaintiff could have, but did not seek leave to file a reply refuting any of these representations.  The Court ruled on all the interrogatories set forth in the original motion to compel (doc. 63), since Plaintiff represented that there had been no supplemental responses when they filed their updated motion (doc. 75), and ruled on only those requests for documents set forth in Plaintiff's updated motion.[5]

---

[5] There are also several instances where Defendants addressed items not listed in Plaintiff's updated motion or failed to respond to items which were included in the updated motion as still being at issue.

**No. 4:03cv208-spm/ak**

Interrogatory No. 3 (Jenkins to City): **GRANTED**.  City shall respond more fully and describe their version of the incident, including the actions they contend were taken to prevent harm to the Plaintiff.

Interrogatory No. 4: **GRANTED**.  Plaintiff asks for the facts the City contends support its affirmative defenses.  She is not asking for legal theory or mental impressions, she specifically asks for facts, and not facts to support *her* claims, the facts to support the City's defenses.

Interrogatory No. 6: **GRANTED**.  If the City knows which officers were at the scene, it shall identify them and cannot evade its duty to respond to proper interrogatories by referring a party to other sources for the information.

Interrogatory No. 7: **GRANTED**.  While it appears that Plaintiff may have this information by this time, the interrogatory was properly phrased and the City's objection that it was vague is not well taken, and the question should be answered completely.

Interrogatory No. 8: **DENIED**.  The interrogatory is overbroad in that it asks for any statement, written or otherwise, and any remark made by anyone about this lawsuit. Defendants have provided written statements from Plaintiff, officers at the scene, and statements taken in conjunction with an investigation.  This is sufficient.

Interrogatory No. 10: **DENIED**.  This interrogatory is vague and overbroad. Defendants contend that they have produced their retention policies, and identified all documents pertaining to the incident on June 27, 2003, at Jenkins' residence.  The remainder of the information sought by this interrogatory, such as content of personnel files, disciplinary files, and training files, is overbroad and vague.  Plaintiff does not ask

for the files of anyone in particular just any files that relate "to the incidents and issues on which the Complaint is based." This is too vague for a response.

Interrogatory No. 2 (Jenkins to Perry): **DENIED**.  This information is protected by statute because of Perry's status as a law enforcement officer, and Plaintiff has failed to show the relevance of this information to the purposes alleged, *e.g.* to show a propensity for abusing citizens or lack of diligence by the City in screening him.  If Plaintiff is trying to establish a violent background, which the City failed to detect in its screening process, then Plaintiff needs to tailor its search for this information more narrowly.

Interrogatory No. 4: **GRANTED**.  Plaintiff is entitled to Officer Perry's version of the incident at issue.

Interrogatory No. 7: **GRANTED**.  Plaintiff is entitled to Officer Perry's version of the phone call and the conversations surrounding that phone call.

Interrogatory No. 10: **DENIED**.  Perry has responded that he did not know a car was searched on the premises that day, and therefore, can supply no facts or evidence supporting probable cause for such a search.  This is a sufficient response to the interrogatory.

Interrogatory No. 11: **DENIED**.  Perry has responded that all disciplinary actions he received were in his personnel file, which has been produced, and in his response to the motion to compel further explains that there were no disciplinary actions purged from his file, as Plaintiff feared, rather his file contained ALL his disciplinary actions regardless of their time frame, even though according to the department's purge policy

**No. 4:03cv208-spm/ak**

described by Carol Hendrix at her deposition, some of the actions in his file were actually outside the time frame and could have been purged.

Interrogatory No. 12: **GRANTED**.  If Perry has made false statements, etc., as described in the interrogatory, he shall identify such instances and where he was disciplined for these actions he shall identify the particulars about the actions for which he was disciplined.

Interrogatory No. 13: **GRANTED IN PART**.  This is a straightforward question, and Perry shall answer it by identifying those persons whom he knows to have knowledge about the issues raised in the complaint, and the defenses pled by him, and the substance of the person's knowledge, but he is not required to link each witnesses' knowledge to the particular defense.  This information invades the mental impressions and strategy of counsel making it work product.

Interrogatory No. 14: **GRANTED**.  Perry shall identify each person who was present at the incident of June 27, 2003.  There are no other incidents of which the Court is aware nor has Plaintiff argued that there is more than one incident.

Interrogatory No. 1 (Wooden to Perry): **DENIED**.  Perry has identified who his direct supervisor was and described the chain of command over him which did not include Chief McNeil.  Plaintiff insists on "evidence" of this chain of command.  If Plaintiff wants a policy manual or some document setting forth the chain of command for police officers like Perry, he should ask for this document pursuant to Rule 34, Federal Rules of Civil Procedure.  Otherwise, the interrogatory has been answered.

**No. 4:03cv208-spm/ak**

Interrogatory No. 5: **DENIED**.  Perry has responded that he will rely on the testimony of himself, Plaintiff Wooden, and the other officers on the scene to support his denial of the specific allegations set forth in the interrogatory.  This answers the question asked.

Interrogatory No. 7: **DENIED**.  Again, Perry denies that Plaintiff Jenkins was naked and will rely upon the incident report and the testimony of himself, other officers, and the Plaintiffs themselves to support his denial.  He has been asked in Interrogatory No. 4 propounded by Jenkins to describe his version of the incident, he does not need to repeat himself in response to this interrogatory.

Interrogatory No. 8: **DENIED**.  Perry has described what evidence he will rely upon to support his version of the facts.  Plaintiff has propounded several interrogatories of this type, which are unfamiliar to this Court, but the detail Plaintiff is apparently seeking, *i.e.* a fact by fact break down of the evidence Perry will rely upon borders on seeking the strategy or mental impressions of counsel, which is work product and is not discoverable absent some additional showing of need.  Further, the  nature of this lawsuit is such that the evidence by both parties as to what happened is going to be primarily their testimony, which will in turn rest on their credibility.  Thus, the Defendant's response that the evidence will be testimony is entirely reasonable and predictable.  Understandably, Plaintiff will want to learn what each person's testimony is likely to be, and that is what depositions are for, not interrogatories.

Interrogatory No. 9: **DENIED**.  <u>See</u> above Interrogatory No. 8.

Interrogatory No. 10: **DENIED**.  <u>See</u> above Interrogatory No. 8.

**No. 4:03cv208-spm/ak**

Interrogatory No. 11: **DENIED**.  <u>See</u> above Interrogatory No. 8.  Perry has already been asked to give his version of the incident.

Interrogatory No. 12:  **DENIED**.  <u>See</u> above Interrogatory No. 8.

Interrogatory No. 13:  **DENIED**.  <u>See</u> above Interrogatory No. 8.

Interrogatory No. 14:  **DENIED**.  <u>See</u> above Interrogatory No. 8.

Interrogatory No. 16:  **DENIED**.  <u>See</u> above Interrogatory No. 8.

Interrogatory No. 17: **DENIED**.  Plaintiff is not entitled to the Defendant's defense theory.

Interrogatory No. 18: **DENIED**.  It is improper to ask a party to explain the legal basis for a defense.

<u>Interrogatory No. 4 (Jenkins to McNeil)</u>: **DENIED**.  Plaintiff asks McNeil to describe an incident he did not witness nor participate in.  Plaintiff's claims against McNeil for failure to investigate and failure to train would not be furthered by his understanding of the incident since his alleged actions or inactions would have occurred prior to or following the incident.

Interrogatory No. 5: **GRANTED IN PART**.  Because of Chief McNeil's long tenure with the Tallahassee Police Department it would be unduly burdensome and irrelevant to inquire as to the "chain of command up and down" for every position he has held since 1979.  However, McNeil should respond and name the persons in his chain of command at the time of the incident, June 27, 2003.  No other time frame for this particular information is relevant.

**No. 4:03cv208-spm/ak**

Interrogatory No. 6: **DENIED**.  McNeil has responded sufficiently to the relevant portions of the interrogatory.  There is no use of force claim asserted here and the Court is not persuaded that discovery about how he treated aggressiveness in this context is relevant to the facts of this case.  Further, his role in the disciplinary process for any position other than his present role as Chief of Police is not relevant.

Interrogatory No. 9: **DENIED**.  Irrelevant.

Interrogatory No. 10: **DENIED**.  Irrelevant.

Interrogatory No. 11: **DENIED**.  Irrelevant.  Plaintiffs have not alleged that drugs or weapons were planted on them.

Interrogatory No. 13: **DENIED**.  This type of information is best solicited in a deposition.  The interrogatory is too broad based and vague to elicit an adequate response, so the Court is not persuaded that the failure of McNeil to respond hampered further inquiry.

Interrogatory No. 14: **DENIED**.  Again, this type of information is best solicited in a deposition, which apparently was taken and this question answered.  The Court disagrees that it is not relevant, but again the interrogatory is too broad based to elicit any meaningful response.

Interrogatory No. 15: **DENIED**.  Again, this type of information is best solicited in a deposition.  Presumably, Plaintiff has obtained a number of disciplinary actions involving Officer Perry and wants to inquire of Perry and McNeil what transpired with these incidents.  This line of inquiry should take place during their depositions.  The interrogatories are too broadly phrased to elicit any meaningful information.

**No. 4:03cv208-spm/ak**

Interrogatory No. 16: **GRANTED**.  McNeil should answer this question and offer his opinion of any set of circumstances when officers might interrogate a female naked, if he can think of any such circumstances.

Interrogatory No. 17: **GRANTED IN PART**.  McNeil should identify the persons with knowledge of the claims and defenses raised in this lawsuit and the substance of their knowledge, but he is not required to link each witnesses knowledge to the particular defense.  This information invades the mental impressions and strategy of counsel making it work product.

Interrogatory No. 18: **DENIED**.  Overbroad.  McNeil has responded with his knowledge about written statements which is sufficient.

<u>Interrogatory No. 1 (Wooden to McNeil)</u>: **DENIED**.  McNeil's denial that he does not supervise Officer Perry is sufficient.

Interrogatory No. 3: **DENIED**.  <u>See</u> Interrogatory No. 8, p. 11 above.

Interrogatory No. 4:  **DENIED**.  <u>See</u> Interrogatory No. 8, p. 11 above.  Also, McNeil was not present at the incident; therefore, he cannot describe it.

Interrogatory No. 5: **DENIED**.  It is not proper to ask a party to provide legal bases for his defenses.

Interrogatory No. 7:  **DENIED**.  <u>See</u> Interrogatory No. 8, p. 11 above.

Interrogatory No. 8:  **DENIED**.  <u>See</u> Interrogatory No. 8, p. 11 above.

Interrogatory No. 9:  **DENIED**.  <u>See</u> Interrogatory No. 8, p. 11 above.

Interrogatory No. 10:  **DENIED**.  This type of information is best solicited in a deposition.

**No. 4:03cv208-spm/ak**

Interrogatory No. 11: **DENIED**.  The interrogatory is overbroad as written.  If Plaintiff wants to know what the procedures are for detaining persons in a home with other persons being arrested, the interrogatory should have been phrased more narrowly.  Instead, Plaintiff asks for the "considerations" when faced with this type of situation which encompasses too much information and too many variables not identified in the question.  This type of information would best be solicited in a deposition.

Interrogatory No. 12: **DENIED**.  It is improper to ask a party to define a legal term.

Interrogatory No. 13: **DENIED**.  The way the interrogatory is phrased it calls for McNeil to define a legal term.

Interrogatory No. 15: **GRANTED**.  McNeil should answer whether an officer who does not complete training on a police procedure is subject to discipline for violating that procedure.

Interrogatory No. 17: **GRANTED.**  Although it appears that McNeil may have answered this question, he shall be more responsive, if possible, without posing objections.

Interrogatory No. 18: **DENIED**.  Irrelevant. There are no allegations in this lawsuit that any of the Defendants collected drug paraphernalia.

Interrogatory No. 19: **DENIED**.  There are no allegations in this lawsuit that any of the Defendants falsely claimed to have received training.

**No. 4:03cv208-spm/ak**

Request for Documents No. 4 (Jenkins to City): **DENIED**.  The request is vague and Plaintiff is not entitled to inspect non-specified "files that might contain materials." Defendants have produced their General Orders Manual and training documents, which they assert are responsive to the request.

Request No. 5: **GRANTED**.  Although Defendants represent that they have produced training notes from each officers personnel file, they do not address whether they have books, booklets, CD's, DVD's, or videotapes regarding the training issues of probable cause, arrest, false arrest and imprisonment, and if they have these items, they are relevant and shall be produced.

Request No. 8: **DENIED**, based on Defendants' representations that they have produced documents compliant with this request.  Plaintiff did not file a reply refuting any of these representations.

Request No. 9:  **DENIED**, based on Defendants' representations that they have produced documents compliant with this request.  Plaintiff did not file a reply refuting any of these representations. Plaintiff's updated motion to compel these items was based on their failure to be produced, and she has not adequately briefed the issue of subsequent remedial measures for the Court to rule on this aspect of the discoverability of these documents.

Request No. 10: **DENIED**.  Plaintiff has not adequately explained the relevancy of the use of force documents to persuade this Court to compel their production, and Perry has already explained that there were no documents purged from his file.

**No. 4:03cv208-spm/ak**

Request No. 11: **GRANTED IN PART**, insofar as the Court is aware Defendant Perry is the only officer to explain that none of his disciplinary reports were purged, despite the purge policy described by Carol Hendrix at her deposition.  It is not clear whether this same representation holds true for Officer Rowell and Defendant shall make this clear in a supplemental response addressing whether disciplinary reports were purged from Rowell's file or they were included in the production.

Request No. 12:  **GRANTED IN PART**, insofar as the Court is aware Defendant Perry is the only officer to explain that none of his disciplinary reports were purged despite the purge policy described by Carol Hendrix at her deposition.  It is not clear whether this same representation holds true for Officer Lowery and Defendant shall make this clear in a supplemental response addressing whether disciplinary reports were purged from Lowery's file or they were included in the production.

Request No. 14: **DENIED**.  Defendants represent that they have produced tapes of interviews concerning the incident at issue, and Plaintiff's request, as it concerns other complaints, is irrelevant and overbroad.

Request No. 5 (Wooden to City): **DENIED**.  Defendants represent that they have produced all documents previously objected to, with the exception of "Use of Force" logs, which again is not an issue in this lawsuit and is not relevant.

Request No. 11: **DENIED**.  Defendants represent that they have now fully complied with this request.

Request No. 2 (Jenkins to Perry): **DENIED**.  Overbroad.

Request No. 10: **DENIED**.  Overbroad.

**No. 4:03cv208-spm/ak**

Request No. 12: **DENIED**.  Defendants represent that they have produced a privilege log.

Request No. 1 (Wooden to Perry): **DENIED**.  Defendant represents that all documents responsive to this request have been produced.

Request No. 6:  **DENIED**.  Defendant represents that all documents responsive to this request have been produced.

Request No. 7:  **DENIED.**  Defendant represents that all documents responsive to this request have been produced.

Request No. 8:  **DENIED**.  Defendant represents that all documents responsive to this request have been produced.

Request No. 3 (Jenkins to McNeil): **DENIED**.  Overbroad.  Further, Defendant represents that all documents responsive to this request have been produced.

Request No. 5: **DENIED**.  Overbroad.  Further, Defendant represents that all documents responsive to this request have been produced.

Request No. 7:  **DENIED**.  Overbroad.  Further, Defendant represents that all documents responsive to this request have been produced.

Request No. 1 (Wooden to McNeil):  **DENIED**.  Defendant represents that all documents responsive to this request have been produced.

Request No. 5: **DENIED**.  McNeil has already provided Plaintiff with his job positions with the Tallahassee Police Department since 1979.

Request No. 6: **DENIED**.  Irrelevant.

**No. 4:03cv208-spm/ak**

**Attorneys Fees**

The Court finds that both parties were substantially justified in taking their positions with regard to filing the discovery motions and in opposing them, and since both parties were partially successfully in approximately equal measures in taking their positions, neither party should be awarded fees and expenses with regard to their motions.

**Status Report**

The parties have sought and been granted a stay of the Court's ruling on their pending dispositive motions until such time as this Court resolves their discovery issues. (Doc. 119).  The parties shall now confer and decide what discovery remains to be taken as a result of this decision, how long such discovery might take, what other deadlines might be affected, and how this additional discovery will affect the pending motions, such as whether some or all of the motions will be withdrawn in whole or in part or whether they be supplemented, and if supplemented, when that can be accomplished.  The present trial date is June 19, 2006, and all proposed deadlines shall be made with that consideration in mind, since there has been no request by either party to reschedule the trial again.  After this conferral, the parties shall file a Joint Status Report detailing all the above concerns and requesting what extensions of time they need accordingly.

Accordingly, it is

**ORDERED:**

1.  Defendant City of Tallahassee's Motion to Compel (doc. 59) is **GRANTED IN PART**, in that Plaintiff shall on or before **April 10, 2006**, respond fully and completely to

**No. 4:03cv208-spm/ak**

Interrogatory No. 11, and she shall provide **forthwith** any medical records from Dr. Snapp not heretofore produced.  The motion is **DENIED** in all other respects.

2.  Defendants' Motion to Compel Elaine Harper's Deposition Testimony (doc. 61) is **GRANTED IN PART**, in that she is hereby compelled to respond to questions about the letter written to Chief McNeil, her sworn statement, and her personal knowledge of the facts related to the claims raised in this complaint.  The particulars of resuming her deposition, if that is the manner in which Defendants wish to obtain this information, shall be addressed in the Status Report.  The motion is **DENIED** in all other respects.

3.  Plaintiff's Motion to Compel (doc. 75) is **GRANTED IN PART**, as set forth above. Where additional supplementation or production has been granted, Defendant shall so respond on or before **April 10, 2006.**

4.  The parties shall confer and submit a Status Report in the detail set forth above on or before **April 14, 2006.**

**DONE AND ORDERED** at Gainesville, Florida, this  _30th_ day of March, 2006.


**s/ A. KORNBLUM**_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**No. 4:03cv208-spm/ak**