IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOANNE JENKINS and
QUENTON WOODEN,

    Plaintiffs,

vs.                                    CASE NO.: 4:03cv208-SPM/AK

CITY OF TALLAHASSEE,
CHIEF WALTER MCNEIL,
OFFICER CHUCK PERRY,

    Defendants.
_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This cause comes before the Court on the motions for summary judgment filed by Officer Chuck Perry, Chief Walter McNeil, and the City of Tallahassee. (docs. 85, 87, 89, and 91). Plaintiffs filed a response (doc. 98) and an amended response (doc. 142) after conducting additional discovery.

**I.    BACKGROUND**[1]

This case concerns the actions of four officers of the Tallahassee Police Department who were attempting to execute a capias for Kevin D. Wynn on June

---

[1] The facts stated in this section are disputed by Defendants, but they are presented for purposes of summary judgment in the light most favorable to Plaintiffs. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999)

27, 2003.  Kevin Wynn had been arrested in Leon County, Florida on January 7, 2003 on several charges, including possession of cocaine with intent to sell, manufacture, or deliver; possession of cannabis with intent to sell, manufacture, or deliver; extortion or threats; and fleeing or eluding an officer.  To support his application for pretrial release, Kevin Wynn certified that he resided with his sister, Plaintiff Joanne Jenkins, at 1421 Colorado Street in Tallahassee, Florida for the past 16 years.  When Kevin Wynn failed to appear for a pretrial case management conference on June 4, 2003, the judge issued a capias to have Kevin Wynn arrest and brought before the court.  The address for Kevin Wynn on the capias was 1421 Colorado Street.  On prior occasions, however, Ms. Jenkins told officers that Kevin Wynn did not live with her.

According to Officer Perry, he received a call from Captain Kelly Burke, who advised that a confidential informant stated that Kevin Wynn was seen in Ms. Jenkins' neighborhood, driving an older, box-style Chevy.  Ms. Jenkins drives a 1991 Chevy Caprice Classic.  On June 27, 2003, Officer Chuck Perry verified that the capias was still active.  Officer Perry contacted Officers James "Audie" Rowell, Joshua Lowery, and Douglas Clark to assist in executing the capias.  At approximately 9:38 a.m., they arrived at Ms. Jenkins' home at 1421 Colorado Street.

Two officers went around to the back of the house to serve as "breakout" units in case someone attempted to escape out the back door or window.  Another officer went to the front corner of the house.  Officer Perry was at the

front door.

At the time, Plaintiff Quentin Wooden was a guest in Ms. Jenkins' home. He was sitting on the couch in the living room. He looked up to see the door being pushed open, then hitting the wall. Ms. Jenkins, who was in the shower, heard a banging sound. She continued with her shower for the next five minutes.

In the meantime, Officer Perry came crouching through the door without knocking and with his gun in his hand. He moved past Mr. Wooden. When Mr. Wooden got off from the couch and walked toward Officer Perry, Officer Perry stood upright and asked Mr. Wooden if anyone else was in the house. Mr. Wooden responded that the owner of the home was in, but no one else. Then Officer Perry asked Mr. Wooden his name. Mr. Wooden responded that his name was Quentin. Officer Perry asked Mr. Wooden if Kevin was in the house. Mr. Wooden said no. Officer Perry accused Mr. Wooden of lying and stated that he had just seen Kevin Wynn come through the door. Mr. Wooden responded that he didn't think so.

Officer Perry checked Mr. Wooden's pockets and patted him down. He then instructed another officer to come inside and handcuff Mr. Wooden. The officer handcuffed Mr. Wooden. To verify his identity, Officer Perry asked Mr. Wooden for identification. Mr. Wooden explained that he had identification, but that he must have left it in the back bedroom.

At this point, Ms. Jenkins finished her shower. She placed a small sheer robe in front of her with the intention of walking from the bathroom, into the hall,

and toward her bedroom.  As she stepped out of the bathroom and into the hall, however, she saw an officer with a gun shining a light on her.  She asked what he was doing in the house.  He responded that Kevin Wynn was seen driving the car parked outside of the house.

Ms. Jenkins asked if she could put some clothes on.  When the officer refused and directed her to come to the front, Ms. Jenkins became upset and started crying hysterically.  In the living room, Ms. Jenkins saw Officer Perry.  He stated again that he saw Kevin Wynn come into the house.  Ms. Jenkins refuted the statement and asked again if she could put some clothes on.  Officer Perry refused.

Ms. Jenkins asked Officer Perry if he had a search warrant.  Officer Perry responded that he didn't need a search warrant because he had a warrant to arrest Kevin Wynn.  Officer Perry then asked Ms. Jenkins if he could search her home.  Ms. Jenkins stated that he could if he had a search warrant, but otherwise could not.  Officer Perry told Ms. Jenkins that he did not have a search warrant.

Ms. Jenkins showed Officer Perry that Kevin Wynn was not listed on her lease. She then picked up the phone to call her aunt for advice.  When the aunt asked to speak to the officer, Ms. Jenkins handed the phone to Officer Perry. Ms. Jenkins heard Officer Perry state, "If your family has a problem with me coming here–I can come here any time I damn well please.  If your family has a problem with it, let them hire an attorney."  In the meantime, two officers, with guns drawn, were going through the house.

During this period an officer walked Mr. Wooden past Ms. Jenkins and half way down the hall for the purpose of retrieving Mr. Wooden's identification. The officer then decided that he did not want to take Mr. Wooden into the room and took him outside. Once outside, the officer asked Mr. Wooden where the identification was located. Mr. Wooden stated that it was on the bed in one of the children's bedrooms, where he had been playing a video game with the child. One officer went into the house to find the identification. When the officer could not find the identification, Mr. Wooden was taken back into the house and led to the bedroom, where he showed the officers the identification. An officer picked up the identification and took Mr. Wooden back outside. The officer pushed Mr. Wooden into a chair. Another officer came and pointed his gun at Mr. Wooden. Mr. Wooden stayed there for a period of about ten minutes. Then, one of the officers stated that Mr. Wooden had no warrants, and instructed another officer to uncuff Mr. Wooden.

In the meantime, Ms. Jenkins was still in the house, unclothed, talking with her aunt on the telephone. Officer Perry was standing with her. The door to the house was open, exposing Ms. Jenkins to passers by. Ms. Jenkins' aunt instructed her to call the chief of police, which Ms. Jenkins did. The officers were still in the process of searching though Ms. Jenkins home. They did not limit their search to places where Kevin Wynn could be hiding. Instead, Ms. Jenkins saw them looking through laundry and the glove compartment of her car. Ms. Jenkins spoke to Chief McNeil's secretary and told her what was going on. The secretary

told Ms. Jenkins she would forward the message to Chief McNeil.  By this time, the officers had finished their search.

When the officer uncuffed Mr. Wooden, Mr. Wooden told them, "You can't be doing this."  Officer Perry responded, "I can do it any time I want."  Officer Perry asked, "Do you want our names?  There is nothing you can do about it."  Either Mr. Wooden or Ms. Jenkins responded yes, and the officers left their names.  The entire incident lasted between 20 minutes to one hour.

Later Ms. Jenkins and Mr. Wooden went to the police station to make a complaint.  They contacted the internal affairs office and were told that they didn't have a valid complaint.

Ms. Jenkins and Mr. Wooden have filed this lawsuit, pursuant to 42 U.S.C. § 1983, against Officer Perry, Chief McNeil, and the City of Tallahassee.  In Count One, Ms. Jenkins and Mr. Wooden allege that their rights under the Fourth Amendment were violated when they were falsely imprisoned by being restrained in an unreasonable manner for an unreasonable length of time.  In Count Two, Ms. Jenkins alleges that her rights under the Fourth Amendment were violated when the officers searched her car.  In Count Three, Ms. Jenkins alleges that her substantive due process rights to bodily integrity under the Fourteenth Amendment were violated when she was forced to stand unclothed in view of officers and other persons.  In Count Four, Ms. Jenkins alleges that her rights under the Fourteenth Amendment to equal protection were violated because Officer Perry harassed her based on her sex.  Finally, in Count Five, Ms. Jenkins

seeks and injunction under Florida common law to prevent further violation of her civil rights by Officer Perry pursuant to his threat to return to Ms. Jenkins' home whenever he felt like it.

### I.  Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Id.

The burden is on the moving party to show that there are no genuine issues of material fact to be determined at trial. Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). One way to meet the burden is by showing that the non-moving party lacks evidence to support an essential element of the non-moving party's case. Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996). In determining whether this burden has been met, the court views the evidence and all factual inferences in the light most favorable to the party opposing the motion, and resolves all reasonable doubts about the facts in favor of the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citing

Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982)).

If the moving party has satisfied its burden, the burden shifts to the nonmoving party who must show "that summary judgment would be inappropriate because there exists a material issue of fact." Mullins, 228 F.3d at 1313. The burden can be met by presenting enough evidence to show that a reasonable finder of fact could find for the nonmoving party. Allen, 121 F.3d at 646. The nonmoving party must present more than a scintilla of evidence in support of its position. Anderson, 477 U.S. at 254. The basic inquiry by the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251.

### III.    Officer Perry's Motions for Summary Judgment

Officer Perry seeks summary judgment on each of the counts alleged against him. It is undisputed that Officer Perry was engaged in a discretionary function, and therefore eligible for qualified immunity. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). To overcome Officer Perry's qualified immunity, Plaintiffs must show that (1) Officer Perry violated their constitutional rights, and (2) that the constitutional right was clearly established at the time of the violation. Id.

#### A.    Count One

In Officer Perry's motions for summary judgment, he argues that Ms. Jenkins and Mr. Wooden have failed to show that their detention crossed the line

between a valid investigative stop to become an unlawful de facto arrest.  Officer Perry acknowledges that Ms. Jenkins and Mr. Wooden were detained.  He contends, however, that the detention was brief and minimally intrusive.

The law is well-settled that a warrant for a person's arrest carries with it the limited authority to enter the home where the person lives when there is a reason to believe that the person is within.  Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Magluta, 44 F.3d 1530, 1533 (11th Cir. 1995).  Moreover, once inside the home, the police may conduct a protective sweep of "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  Maryland v. Buie, 494 U.S. 325 (1990).

The police may extend their sweep to other areas if there is a reasonable basis to believe "that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Id.  Officers are entitled "to take reasonable steps to ensure their safety after, and while making, the arrest."  Id. at 334.  Other people encountered in the home may therefore be detained for a brief period if there is an individualized, reasonable suspicion that the person is dangerous.  Id. at 334 n.2.  In any event, police action must be related to the objectives of the authorized intrusion into the home.  Wilson v. Lane, 526 U.S. 603, 611 (1999).

Given the operative facts, Officer Perry's actions in detaining Mr. Wooden and Ms. Jenkins does not satisfy this standard.  First, Officer Perry had no individualized suspicion that either Ms. Jenkins or Mr. Wooden were dangerous.

Officer Perry makes no argument with regard to Ms. Jenkins. With regard to Mr. Wooden, Officer Perry argues in his motion that Mr. Wooden's unclear response when asked whether Kevin Wynn was in the house justified Mr. Wooden's detention. Officer Perry, however, gives no explanation of why he concluded that Mr. Wooden was dangerous. To the extent Officer Perry argues that officers executing an arrest warrant in a home need no individualized suspicion of dangerousness to detain an occupant, that argument has been rejected by the United States Supreme Court. Buie, 494 U.S. at 334 n.2.

Second, Officer Perry kept Mr. Wooden and Ms. Jenkins detained far longer than necessary to search through the house for Kevin Wynn and conclude that he was not home. According to Officer Perry, the sweep of the house to locate Kevin Wynn was completed while Ms. Jenkins was on the telephone with her aunt. Yet Ms. Jenkins and Mr. Wooden remained detained for a much longer period of time while officers searched through laundry, searched Ms. Jenkins car, located Mr. Wooden's identification, and ran a check for outstanding warrants. The arrest warrant gave no authority for a search through the laundry and the car. As for the check of Mr. Wooden for warrants, Officer Perry had no reasonable suspicion that Mr. Wooden was the subject of an outstanding warrant to justify the additional period of detention. C.f. United States v. Simmons, 172 F.3d 775, 778-79 (11th Cir. 1999) (extension of initial valid stop to check for warrant was proper because the officer had reasonable and articulable suspicion that the subject had an outstanding warrant).

The Fourth Amendment "does not permit a frisk for weapons [or an investigative detention] on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized . . . search is taking place." Ybarra v. Illinois, 444 U.S. 85, 94 (1979). The authority to seize a person for questioning or any other purpose, absent probable cause for arrest, is very limited. Terry v. Ohio, 392 U.S.1, 28-29 (1968). Moreover, a person should not be detained for such purpose longer than the time reasonably necessary to accomplish a lawful objective. United States v. Hardy, 855 F.2d at 753, 758-59 (11th Cir. 1988).

The allegations made by Ms. Jenkins and Mr. Wooden, if proven, are sufficient to show that Officer Perry violated their clearly established Fourth Amendment rights by seizing them unlawfully. Accordingly, Officer Perry's motions for summary judgment on Count One will be denied.

### B. Count Two

In Count Two, Ms. Jenkins claims that Officer Perry violated her rights under the Fourth Amendment when her car was searched without a warrant and without probable cause. Officer Perry seeks summary judgment on this count because Ms. Jenkins' sworn testimony establishes that Officer Perry was not the officer who searched the car. Officer Perry further argues that Ms. Jenkins has no evidence to support an allegation that Officer Perry knew about the search, much less caused it. The responses submitted by Ms. Jenkins have failed to sustain a genuine issue of material fact as to this claim. Accordingly, Officer

Page 12 of 18

Perry's motion for summary judgment as to Count Two will be granted.

### C.     Count Three

In Count Three, Ms. Jenkins claims that Officer Perry violated her substantive due process right to bodily integrity by forcing her to stand unclothed in the living room, where she was exposed to the other officer, Mr. Wooden, and passers by.  The right to bodily integrity includes the right to be free from unauthorized and unlawful physical abuse at the hands of the state by a state official acting or claiming to act under color of law, when the alleged conduct is of such nature as to shock one's conscience.  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

Officer Perry seeks summary judgment on grounds that his actions were objectively reasonable.  He cites to Laise v. City of Utica, 970 F.Supp 605 (E.D. Mich. 1997) for the proposition that an officer executing a search warrant may refuse to allow a female occupant dressed only in a bra and underwear to put on a housecoat while she stands in the presence of male officers conducing a search of the home.  A review of Laise shows, however, that the female was allowed to cover herself with a sheet.  Officer Perry also cites to Collier v. Locicero, 820 F.Supp. 673 (D. Conn. 1993).  The Collier case concerned the frisk of a female during the execution of a search warrant.  The female was wearing a nightgown.  Id. at 675  The frisk lasted only a few seconds and the officer touched no private areas through the female's clothing.  Id. at 680-81.  The facts in Laise and Collier are significantly different from the facts in this case.

In this case, Ms. Jenkins alleges that she had only a sheer robe that barely covered her breasts and genitals, and left her backside exposed. Officer Perry had no reasonable suspicion that Ms. Jenkins was dangerous. Nor did he allow her to dress even after he learned that Kevin Wynn was not in the home. Instead, he forced Ms. Jenkins to remain unclothed in the living room, for at least twenty minutes, while officers conducted an unauthorized search of her home and car. These facts, if proven, would be sufficient to shock one's conscious. Accordingly, Officer Perry's motion for summary judgment on Count Three will be denied.

### D.    Count Four

In Count Four, Ms. Jenkins claims that Officer Perry violated her right to equal protection under the law by harassing her based on her sex. Officer Perry seeks summary judgment on this count because there is no evidence to prove that Officer Perry's treatment of Ms. Jenkins was based on her sex.

The responses submitted by Ms. Jenkins have failed to sustain a genuine issue of material fact as to this claim. Ms. Jenkins alleges that Officer Perry was harassing her as a means to put pressure on Kevin Wynn to surrender to law enforcement. There is no evidence to support Ms. Jenkins claim that Officer Perry was acting pursuant to gender bias. Accordingly, Officer Perry's motion for summary judgment on Count Four will be granted.

### E.    Count Five

In Count Five, Ms. Jenkins seeks injunctive relief against Officer Perry to

prevent future violations of her civil rights.[2] If Ms. Jenkins is able to prove her claims against Officer Perry, some form of injunctive relief may be appropriate. See Lankford v. Gelston, 364 F.2d 197, 206 (4th Cir. 1966). The Court recognizes that such injunctive relief is available only in rare cases, but it has not been shown as a matter of law that Ms. Jenkins would not be entitled to any injunctive relief as to Officer Perry. Accordingly, Officer Perry's motion for summary judgment as to Count Five will be denied.

### IV. City and Chief McNeil's Motions for Summary Judgment

The municipal liability claims against the City of Tallahassee and supervisory capacity claims against Chief McNeil are subject to the same standard. Greason v. Kemp, 891 F.2d 829, 837 (11th Cir. 1990). These defendants cannot be held liable for the unconstitutional acts of subordinates under the doctrine of respondeat superior or other doctrines of vicarious liability. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Liability must be based on the defendants' own culpable conduct. Id.

Culpability on the part of a supervisor can be established when the supervisor personally participates in the unconstitutional acts. Id. Furthermore, a municipality will be held for a constitutional violation if it has an official policy

---

[2] The claim for injunctive relief is asserted by both plaintiffs in their Third Amended Complaint (doc. 35 at p. 10). Plaintiffs have since clarified that only Ms. Jenkins is seeking injunctive relief. See doc. 120 at p. 18. Furthermore, although injunctive relief was sought against the City of Tallahassee and Chief McNeil, those claims were dismissed by the Court for lack of standing. See doc. 42 at pp. 8-13.

that authorizes the constitutional violation.  Monnell v. Dep't of Social Servs., 436 U.S. 658, 694-95 (1978).  No such allegations are made in this case.

Culpability can also be shown by other causal links between the defendants' actions or inactions and the unconstitutional conduct.  Hartley, 193 F.3d at 1269.  For example, in the absence of an official policy, a municipality may be held liable if a custom of permissiveness with respect to the alleged constitutional violation exists.  Monnell, 436 U.S. at 694-95.  Thus, where there is wide-spread abuse, liability can result from the failure of the supervisor or policymaker to take corrective action to train, supervise and control subordinates.  Hartley, 193 F.3d at 1269.  The abuse, however, must be "obvious, flagrant, rampant and of continued duration, rather than isolated incidents."  Id. (citation omitted).

In assessing such liability, a three-part inquiry applies: (1) whether the supervisor, in failing to adequately to train, supervise, or control subordinates was deliberately indifferent to the plaintiff's constitutional rights, (2) whether a reasonable person in the supervisor's position would know that his failure reflected deliberate indifference, and (3) whether the supervisor's conduct was causally related to the subordinate's constitutional violation.  Greason, 891 F.2d at 836-37.  Negligence in these matters is not a sufficient basis for imposing liability.  Id.  Deliberate indifference is required.  Id.

In this case, as a basis of liability, Plaintiffs rely on a history of citizen complaints involving Officer Perry and the failure of Chief McNeil or the City of

Tallahassee to insure that adequate corrective action would be taken.  Plaintiffs also note that Officer Perry had 12 or more misconduct complaints.

"[T]he number of complaints bears no relation to their validity."  Gold v. City of Miami, 151 F.3d 1346,1351 (11th Cir. 1998).   To show that the City of Tallahassee and Chief McNeil were aware of a problem with Officer Perry, Plaintiff must demonstrate that those past complaints had merit.  Id.  Plaintiffs have not done so.  Furthermore, most of the complaints involved motor vehicle infractions and procedural matters that are not similar to the alleged violation of Plaintiffs' constitutional rights.  See Church v. City of Huntsville, 30 F.3d 1332, 1342-46 (plaintiff not likely to succeed on claim for failure-to-train in the absence of a prior violation of similar constitutional right).

At most, Plaintiffs can show negligence on the part of Chief McNeil and the City of Tallahassee in handling complaints and in training officers in some aspects of their duties.  The evidence is not sufficient, however, to show wide-spread abuse to which Chief McNeil and the City of Tallahassee were deliberately indifferent.  Plaintiffs, moreover, have not established a causal connection between the these defendants' actions and the deprivation of Plaintiffs' constitutional rights.  Accordingly, the motions for summary judgment by Chief McNeil and the City of Tallahassee will be granted.

**V.	Conclusion**

The facts presented by Plaintiffs, if proven, would be sufficient to show that Officer Perry violated Plaintiffs' clearly established constitutional rights by

unlawfully detaining them on June 27, 2003 while attempting to effect the in-home arrest of Kevin Wynn, as alleged in Count One.  The facts, if proven, are also sufficient to show that Officer Perry violated Ms. Jenkins' clearly established right to bodily integrity under the substantive due process component of the Fourteenth Amendment by forcing Ms. Jenkins to stand unclothed for an extended period of time in view of officers and passers by, as alleged in Count Three.  As for Count Five, Officer Perry has not shown that Ms. Jenkins claim for injunctive relief must fail as a matter of law.  Therefore, Officer Perry's motions for summary judgment as to Counts One, Three, and Five will be denied.

Ms. Jenkins has failed to sustain a genuine issue of material fact for her claims against Officer Perry in Count Two regarding the search of her car and in Count Four for violation of her right to equal protection.  Accordingly, Officer Perry is entitled to summary judgment on Counts Two and Four.  Ms. Jenkins and Mr. Wooden have also failed to sustain a genuine issue regarding the culpability of Chief McNeil and the City of Tallahassee for Officer Perry's conduct.  Accordingly, Chief McNeil and the City of Tallahassee are entitled to summary judgment on all claims.  Whereupon, it is

ORDERED AND ADJUDGED:

1.	The motions for summary judgment by Chief McNeil (doc. 89) and the City of Tallahassee (doc. 91) are granted.

2.	Officer Perry's motion for summary judgment against Ms. Jenkins (doc. 87) is granted as to Counts Two and Four, and denied as to Counts One,

Three, and Five.

      3.     Officer Perry's motion for summary judgment against Mr. Wooden (doc. 85) is denied.

      DONE AND ORDERED this 1st day of August, 2006.

                *s/ Stephan P. Mickle*
                Stephan P. Mickle
                United States District Judge